IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

**ALEXANDER WEINER,**

**Petitioner,**

v.

CRIMINAL ACTION NO. 4:21-cr-13
CIVIL ACTION NO. 4:22-cv-117

**UNITED STATES OF AMERICA,**

**Respondent.**

*MEMORANDUM OPINION AND ORDER*

Before the Court is Alexander Weiner's ("Petitioner") *pro se* Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255. Pet'r's Mot. Vacate, ECF No. 35 ("Mot."). The Government opposed the Motion and Petitioner replied. Resp't's Mem. Opp. Pet'r's Mot. Vacate, ECF No. 45 ("Opp."); Pet'r's Reply to Resp't's Mem. Opp. Pet'r's Mot. Vacate, ECF No. 48 ("Reply"). The matter is now ripe for judicial determination. Having reviewed the Motion and relevant filings, the Court finds that a hearing is not necessary to address Petitioner's Motion. *See* 28 U.S.C. § 2255(b) (A court shall grant a prompt hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."). For the reasons set forth below, Petitioner's § 2255 Motion is **DENIED**.

**I.  FACTUAL AND PROCEDURAL HISTORY**

On March 19, 2021, Petitioner was named in a one-count Indictment. Indictment, ECF No. 1. Count One of the Indictment charged Petitioner with Conspiracy to Possess with Intent to Distribute Marijuana, in violation of 21 U.S.C. § 846, 841(a)(1) and 841(b)(1)(B). *Id.* On March 30, 2021, Attorney Shawn M. Cline appeared as counsel in this case for Petitioner. Notice Appear., ECF No. 5. On June 3, 2021, Petitioner pled guilty to Count One of the Indictment

pursuant to a Plea Agreement. Plea Agreement Hr'g, ECF No. 16; Plea Agreement, ECF No. 17.

According to the Presentence Investigation Report ("PSR"), on November 5, 2020, a search warrant was executed on Petitioner's residence. Presentence Inv. Report ¶ 6(7), ECF No. 31 ("PSR"). During the search of the residence, the Government recovered approximately 240 pounds of marijuana, 40 grams of cocaine, 49 grams of Psilocyn Mushrooms, 4 grams of LSD, various Vape cartridges containing THC/marijuana, over 60 pounds of various marijuana candies, $107,083 in U.S. currency and 28 unsigned Postal Money Orders totaling $27,800. *Id.* at ¶ 6(8). Petitioner agreed he was responsible for between 400 and 700 kilograms of converted drug weight. *Id.* On the same day Petitioner admitted to selling and purchasing marijuana and stated that someone he knows brings him duffle bags of hemp. *Id.* at ¶ 8. Petitioner is attributed with 13,429.78524 grams of marijuana from the search of Petitioner's residence. *Id.* at ¶ 11. The PSR attributes the following to Petitioner: Marijuana - Total of 12,131.95 grams; Psilocybin Mushrooms - Total of 20.42 grams; Cocaine - Total of 34.21 grams; Lysergic Acid Diethylamide (LSD) - Total of 4.6197 grams; Marijuana - Total of 126,512.798 grams; Marijuana - Total of 1,315.86 grams; and Marijuana - Total of 23,500 grams. *Id.* at ¶¶ 12–16.

Petitioner was assessed a Criminal History Category of IV, Total Offense Level of 23, and had a recommended U.S. Sentencing Guidelines range of 70 to 87 months in prison. *Id.* at ¶¶ 77–78. The Court sentenced Petitioner to 84 months' incarceration followed by five years of supervised release. J., ECF No. 33.

On November 3, 2022, Petitioner timely filed the instant *pro se* Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255. Mot. Petitioner makes two claims: (1) prosecutorial misconduct resulted in overcalculated drug weight during sentencing; and (2) trial counsel provided ineffective assistance by incorrectly advising petitioner on sentencing

guidelines and failing to present Petitioner with evidence. *Id.* at 5–8. Petitioner requests to be resentenced to the mandatory minimum, 60 months, and to have his supervised release reduced to 3 years or less. *Id.* at 15. On February 20, 2023, the Government replied in opposition. Opp. On March 13, 2023, Petitioner replied. Reply.

## II. LEGAL STANDARD

### A. Section 2255

Section 2255 allows a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . [to] move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a). In a § 2255 motion, the petitioner bears the burden of proving his or her claim by a preponderance of the evidence. *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). *Pro se* filers are entitled to more liberal construction of their pleadings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

When deciding a § 2255 motion, the Court must promptly grant a hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Motions under § 2255 generally "will not be allowed to do service for an appeal." *Sunal v. Large*, 332 U.S. 174, 178–79 (1947). For this reason, issues already fully litigated on direct appeal may not be raised again under the guise of a collateral attack. *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013). Issues that should have been raised on direct appeal are deemed waived, procedurally defaulted, and cannot be raised on a § 2255 motion. *United States v. Mikalajunas*, 186 F.3d 490, 492 (4th Cir. 1999).

However, an individual may raise a procedurally defaulted claim if he or she can show (1) "cause and actual prejudice resulting from the errors of which he complains" or (2) that "a

miscarriage of justice would result from the refusal of the court to entertain the collateral attack... [meaning] the movant must show actual innocence by clear and convincing evidence." *Id.* at 492–93. To demonstrate cause and prejudice, a petitioner must show the errors "worked to [his or her] actual and substantial disadvantage, infecting [his or her] entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Ineffective assistance of counsel claims should generally be raised in a collateral motion instead of on direct appeal and constitute sufficient cause to review a procedurally defaulted claim. *See Untied States v. Benton*, 523 F.3d 424, 435 (4th Cir. 2008); *Mikalajunas*, 186 F.3d at 493.

### B. Ineffective Assistance of Counsel Claim

A viable ineffective assistance of counsel claim arises when "the counsel's conduct so undermined the proper functioning of the adversarial process that the trial did not result in a just outcome." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). An ineffective assistance of counsel claim is properly raised on a § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance. *United States v. Williams*, 977 F.2d 866, 871 (4th Cir. 1992). To prove a claim of ineffective assistance of counsel, a petitioner must make two showings.

First, a petitioner must show that counsel's performance was deficient. *Strickland*, 466 U.S. at 687. Counsel's errors must have been so serious that he or she was not actually functioning as "counsel" as guaranteed by the Sixth Amendment. *Id.* To demonstrate deficient performance, a petitioner must show "that counsel's representation fell below an objective standard of reasonableness" under the prevailing norms of the legal community. *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential," so "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

4

professional assistance." *Id.* at 689. That presumption is even greater when counsel's decisions represent strategic tactical decisions requiring "assessment and balancing of perceived benefits against perceived risks." *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004). A petitioner bears the burden of rebutting this presumption. *Strickland*, 466 U.S. at 689.

Second, a petitioner must show that the deficient performance prejudiced the defense. *Id.* at 687. In other words, counsel's errors must have been so serious that the petitioner was deprived of a fair trial with a reliable result. *Id.* To demonstrate prejudice, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Supreme Court defines a reasonable probability as "a probability sufficient to undermine confidence in the outcome." *Id.* In short, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgement of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. If a petitioner cannot meet either component of the *Strickland* test, the ineffective-assistance claim will fail. *Id.* at 700. The Court need not address both components of the test if petitioner makes an insufficient showing on one prong. *Id.* at 697.

### III. DISCUSSION

Petitioner makes two claims: (1) prosecutorial misconduct resulted in overcalculated drug weight during sentencing; and (2) trial counsel provided ineffective assistance by incorrectly advising Petitioner on sentencing guidelines and failing to present him evidence. Mot. at 5–8. The Court will address each claim in turn below.

#### A. Prosecutorial Misconduct

Petitioner first argues that prosecutorial misconduct resulted in overcalculated drug weight during sentencing. *Id.* at 5–6. Specifically, Petitioner argues that the prosecution did not

provide photo evidence of LSD attributed to him in the PSR, dimensions of the paper evidence containing the LSD, or the test results. *Id.* Petitioner argues that this lack of evidence caused his LSD drug weight total to be overcalculated by approximately 89 percent and resulted in a greater sentencing recommendation. *Id.*

United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(c) note (G) states: "In the case of LSD on a carrier medium (*e.g.*, a sheet of blotter paper), do not use the weight of the LSD/carrier medium. Instead, treat each dose of LSD on the carrier medium as equal to 0.4 milligrams of LSD for the purposes of the Drug Quantity Table." According to U.S.S.G. § 2D1.1 application note (10), "LSD on a blotter paper carrier medium typically is marked so that the number of doses ('hits') per sheet readily can be determined. When this is not the case, it is to be presumed that each 1/4 inch by 1/4 inch section of the blotter paper is equal to one dose."

The Government provided defense counsel with reports indicating the recovery of four different-sized sheets of LSD. Opp. at 6. The Department of Homeland Security Lab reported a total of 4.6197 grams of LSD. PSR at ¶ 12. This calculation consisted of the following: 2 rectangular pieces of paper containing 1.86 grams of LSD; 1 very small square of paper containing .1597 grams of LSD; and 1 square piece of paper containing 2.60 grams of LSD. *Id.* From this report, the converted LSD drug weight totaled 461.97 kilograms (calculated as 4.6197 x 100 kilograms, as per the Drug Conversion Table in U.S.S.G. § 2D1.1 application note (8)(D)). *Id.* at ¶ 23. Neither party filed an objection to the PSR, and the parties agreed upon the converted drug weight. PSR at ¶¶ 6(8), 27; Plea Agreement at ¶ 3, ECF No. 17; Statement of Facts, ECF No. 18 at ¶ 8 ("SOF").

In the Statement of Facts incorporated into the Plea Agreement, Petitioner stipulated that the search of his residence recovered approximately "4 grams of LSD" and that he is

6

"responsible for between 400 and 700 kilograms of converted drug weight." SOF at ¶ 8; see Plea Agreement at ¶ 3. At the Rule 11 plea colloquy, Petitioner testified under oath that he understood the Statement of Facts and that it is accurate:

> THE DEFENDANT: I am pleading guilty, Your Honor.
>
> THE COURT: It is insufficient that you plead guilty. There must be a factual basis for the plea. The Court has found a statement up here entitled "Statement of Facts." Did you sign this Statement of Facts, Mr. Weiner?
>
> THE DEFENDANT: Yes, Your Honor, I did.
>
> THE COURT: Did you discuss it with Mr. Cline?
>
> THE DEFENDANT: Yes, Your Honor, I did.
>
> THE COURT: Is it an accurate rendition of what you did to commit the offense?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Do you understand that, since you tell the Court under oath today that this is an accurate Statement of Facts of what you did to commit the offense, that when you come back for sentencing, you will not be able to dispute this Statement of Facts?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: You can dispute it, but you would be unsuccessful. Are there amendments to be made to the Statement of Facts, Mr. Cline?
>
> MR. CLINE: No, Your Honor, there are not.
>
> THE COURT: Mr. Hurt?
>
> MR. HURT [THE GOVERNMENT]: No, Your Honor.
>
> THE COURT: The Court will file the Statement of Facts.

Tr. Plea Hr'g, 14:1–15:2, ECF No. 50.

In response to Petitioner's Motion, the Government concedes that it is unclear whether the LSD weight attributed to Petitioner stipulated in discovery was the full weight of the paper, rather than solely the weight of the LSD contained in the paper. Opp. at 6. The Government

further concedes that its discovery does not stipulate the exact sizes of the pieces of paper, therefore making it unclear how many doses were present in the four pieces of paper. *Id.* at 7. Therefore, it is unclear to the Court whether the provided lab reports included the weight of the paper in the calculation of the LSD weight.

Petitioner provides calculations on reply to demonstrate his allegations that the LSD attributed to him was "over calculated" by 89 percent. Mot. at 5. The term "over calculated" apparently has led the parties to different conclusions regarding whether Petitioner's claims, if true, would result in a decreased base offense level. The Government construes Petitioner's claim to allege that the PSR report overstates the *actual* converted drug weight of LSD by approximately 89 percent, resulting in an alleged LSD converted drug weight of about 244.43 kilograms.[1] Opp. at 8. Adding this to the converted drug weight of all the other illicit items found in Petitioner's possession (184.64 kilograms) equals 429.07 kilograms of converted drug weight and still results in a base offense level of 26. *See id.*; PSR at ¶ 23; U.S.S.G. § 2D1.1. Construing Petitioner's calculations this way, no prejudice results from the alleged miscalculation because the base offense level does not change.

In contrast, Petitioner alleges on reply that the *reported* converted LSD drug weight for LSD should be *reduced by* approximately 89 percent, resulting in an alleged LSD converted drug weight of approximately 49 kilograms.[2] Reply at 3–5. Adding this to the converted drug weight of all other illicit items equals 233.64 kilograms and would result in a base offense level of 24. *See* U.S.S.G. § 2D1.1(c)(8).

At bottom, Petitioner directly contradicts the Statement of Facts by claiming he is not "responsible for between 400 and 700 kilograms of converted drug weight." *See* SOF at ¶ 8; Tr.

---

[1] Dividing the reported LSD drug weight of 461.97 kilograms by 1.89 equals 244.43 kilograms.
[2] 89.3 percent of the reported LSD drug weight of 461.97 kilograms equals approximately 412.54 kilograms. Subtracting this number from the reported LSD drug weight equals 49.43 kilograms.

8

Plea Hr'g 14:1–15:2. "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005); *see Blackledge v. Allison*, 431 U.S. 63, 74 (1977). "Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." *Fields v. Attorney General of the State of Maryland*, 956 F.2d 1290, 1299 (4th Cir. 1992).

Despite the Government's concessions, Petitioner demonstrates no extraordinary circumstances that suggest he should not be bound to his sworn statements at his Rule 11 plea colloquy. Petitioner signed every page of the Plea Agreement and Statement of Facts. *See* Plea Agreement; SOF. He testified under oath that he accepted them freely and that the Statement of Facts is accurate. Tr. Plea Hr'g 3:25–8:6, 14:1–15:2. Further, regardless of which calculations accurately construe Petitioner's claim, they do not demonstrate clear and convincing evidence that he is not responsible for "400 to 700 kilograms of converted drug weight." SOF at ¶ 8; *see Fields*, 956 F.2d at 1299. Petitioner's calculations on reply rest on unsubstantiated allegations that certain "miscalculations" apply to all pieces of paper containing LSD reported in the PSR. Reply at 3–5. This is insufficient to discard his sworn statements made at his plea colloquy.

"[C]ourts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy," lest the statements lose their "'primary virtue'" of "'permitting quick disposition of baseless collateral attacks.'" *Lemaster*, 403 F.3d at 221–22 (quoting *Blackledge*, 431 U.S. at 79 n. 19). Petitioner directly contradicts the facts he stipulated

9

and swore to be accurate, making his claims "patently frivolous." *Lemaster*, 403 F.3d 221. Therefore, the Court rejects Petitioner's first ground for relief in his § 2255 Motion.

### B. Ineffective Assistance of Counsel

Petitioner claims his trial counsel, Mr. Cline, provided ineffective assistance by failing to object to the LSD drug weight attributed to him. Mot. at 7. Petitioner argues that Mr. Cline "should have plainly known" that the LSD drug weight had been miscalculated and should have understood the drug calculations in the Federal Sentencing Guidelines, therefore providing unreasonable and unprofessional advice. *Id.* Petitioner also argues that counsel failed to request from the Government photographs and measurements of the evidence and test results, and that this failure prevented Petitioner from being presented with the evidence "in its entirety." Mot. at 8. Petitioner alleges that Mr. Cline's conduct "caused [him] to unknowingly plea to an offense level much greater than is legally permissible." *Id.* at 8.

Following Petitioner's Motion, the Court granted the Government's Motion to Compel Counsel to Provide an Affidavit in Response to Petitioner's Ineffective Assistance of Counsel Claims. ECF No. 38, 42. In his affidavit, Mr. Cline declares that he "did provide the evidence to Mr. Weiner which he alleges he did not receive and did so prior to his Rule 11 hearing." Decl. Counsel, ECF No. 45-1 ("Decl."). Mr. Cline also states that Petitioner's claim "appears to have merit." *Id.* Mr. Cline claims he "relied upon the drug weight provided in the discovery without considering that this was almost certainly the weight of the paper on which the LSD had been placed, rather than the appropriate drug weight for LSD under U.S.S.G. § 2D1.1." *Id.* He further states that he "should have recognized this discrepancy and should have filed the appropriate objection." *Id.*

Petitioner's ineffective assistance of counsel claim fails for the same reason as his claim of prosecutorial misconduct. Petitioner stipulated that he was responsible for between 400 and 700 kilograms of converted drug weight and affirmed the accuracy of that stipulation under oath. SOF at ¶ 8; Tr. Plea Hr'g 14:1–15:2. Petitioner also testified that he had sufficient time to review the case with Mr. Cline and was satisfied with his performance. Tr. Plea Hr'g 3:15–19, 14:4–12. Petitioner fails to allege extraordinary circumstances that justify departure from these sworn statements. *See Lemaster*, 403 F.3d at 221–22. Neither Mr. Cline's declaration that Petitioner's claim "appears to have merit," Decl., nor Petitioner's calculations asserted on reply constitute clear and convincing evidence that Petitioner is *not* responsible for 400 to 700 kilograms of converted drug weight. *Fields*, 956 F.2d at 1299. Further, Mr. Cline states in his affidavit that he did provide Petitioner with the evidence he now seeks. Decl. Therefore, Petitioner cannot demonstrate ineffective performance under *Strickland*. *See Rowsey v. United States*, 71 F. Supp. 3d 585, 598–99 (E.D. Va. 2014).

Petitioner also fails to show that he was prejudiced by his counsel's conduct. To meet the prejudice prong of *Strickland*, Petitioner must show that there is a reasonable probability he would have received a lesser sentence but for counsel's errors. *See Fields*, 956 F.2d at 1297; *see also Glover v. United States*, 531 U.S. 198, 202–04 (2001). Petitioner cites the Supreme Court's decision in *Molina-Martinez v. United States*, 578 U.S. 189 (2016), arguing that this Court's reliance on an allegedly "incorrect" guidelines range automatically establishes prejudice. Pet. Reply at 7. Indeed, the Supreme Court held that "in the ordinary case a defendant will satisfy his burden to show prejudice by pointing to the application of an incorrect, higher Guidelines range and the sentence he received thereunder." *Molina-Martinez*, 578 U.S. at 201. Yet Petitioner affirmed the Statement of Facts under oath and testified that he and Mr. Cline had adequate time

11

to review the case before he pled guilty. Plea Agreement Hr'g at 3:15–19, 14:1–15:2. The Guidelines range considered was not "incorrect," but rather a product of Petitioner's sworn statements. Petitioner therefore fails to establish prejudice. *See Rowsey*, 71 F. Supp. 3d at 599.

Finally, construing Petitioner's motion liberally, it may appear that Petitioner also challenges his guilty plea on the basis of ineffective assistance of counsel. *See* Mot. at 8 ("[Petitioner's Counsel's conduct] caused me to unknowingly plea to an offense level much greater than is legally permissible."); *Erickson*, 551 U.S. at 94. But Petitioner's requested relief indicates that his true focus is challenging his sentence. *See* Pet'r's Mot. at 15. Even if he intends to challenge his guilty plea, Petitioner's sworn testimony in open court clearly indicated that he made a knowing, voluntary, and intelligent guilty plea. Tr. Plea Hr'g 3:25–8:6, 14:1–15:2. Petitioner's sworn statements establish his guilt. *See Rowsey*, F. Supp. 3d at 600.

For these reasons, Petitioner fails to satisfy *Strickland*. The Court rejects Petitioner's second ground for relief in his § 2255 motion.

## IV. CONCLUSION

For the reasons stated above, Petitioner's § 2255 Motion is **DENIED**.

This Court may issue a certificate of appealability only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b)(1). This means Petitioner must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n.4 (1983)); *see United States v. Swaby*, 855 F.3d 233, 239 (4th Cir. 2017). Because Petitioner fails to demonstrate a substantial showing of a denial of a constitutional right, a Certificate of Appealability is **DENIED**.

In addition, the Court **ADVISES** Petitioner that he may appeal from this final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. The Clerk must receive this written notice within sixty (60) days from this Order's date. The Court **DIRECTS** the Clerk to provide a copy of this Order to all Parties.

**IT IS SO ORDERED.**

Newport News, Virginia
September 15, 2023

Raymond A. Jackson
United States District Judge